UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE M. FINN,

                    Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CIVIL ACTION NO.: 21 Civ. 5457 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.        INTRODUCTION

Plaintiff Tyrone M. Finn ("Mr. Finn") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  (ECF No. 1 ¶ 1).  Mr. Finn seeks review of the denial by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") of his application for Disability Insurance Benefits ("DIB") under the Act. (Id. ¶¶ 1, 7).   Mr. Finn contends that the decision of the Administrative Law Judge dated February 21, 2020 (the "ALJ Decision") was erroneous, not supported by substantial evidence in the record, and contrary to law, and asks the Court to reverse the Commissioner's finding that he was not disabled and remand to the Commissioner for an award of benefits, or a new hearing. (Id. ¶¶ 10–11).

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On April 2, 2022, Mr. Finn moved for judgment on pleadings.  (ECF No. 17 ("Mr. Finn's Motion")).   On May 31, 2022, the Commissioner cross-moved.  (ECF No. 20 (the

"Commissioner's Motion")).  For the reasons set forth below, Mr. Finn's Motion is DENIED and the Commissioner's Motion is GRANTED.

## II.      BACKGROUND

### A.  Procedural Background

On August 3, 2018, Mr. Finn filed an application for DIB, alleging disability due to injuries to his left shoulder, back, and legs, and anxiety from March 12, 2018 (the "Onset Date") through July 11, 2019.  (Administrative Record ("R.") (ECF No. 12) 15, 34, 57–58; ECF No. 18 at 5 n.1).  On December 14, 2018, the SSA denied Mr. Finn's application.  (R. 15, 56–68).  At Mr. Finn's request, on November 25, 2019, ALJ Sharda Singh conducted a hearing by videoconference (the "Hearing").  (R. 30–55).  On February 21, 2020, ALJ Singh issued the Decision finding that Mr. Finn was not disabled under the Act.  (R. 15–25).  On May 7, 2021, the ALJ Decision became the final decision of the Commissioner when the Appeals Council denied Mr. Finn's request for review. (R. 1–6).

### B.  Factual Background

#### 1.  Non-Medical Evidence

Mr. Finn was born in 1975 and was 42 years old on the alleged Onset Date.  (R. 57).  He completed high school.  (R. 45).  He worked as a tractor trailer truck driver until the Onset Date. (R. 35, 66).  At some earlier point, Mr. Finn injured his back in a fall, and on December 12, 2017, Mr. Finn sustained injuries to his back, left shoulder, and left leg in a tractor trailer accident that kept him out of work for four days.  (R. 35, 528).  By January 2019, he had returned to work as a driver three days per week, and by July 11, 2019, he had fully returned to work (the "RTW Date")). (R. 34–35).

### 2. **Medical Evidence**

Mr. Finn and the Commissioner have each provided summaries of the medical evidence in the Record.  (See ECF Nos. 18 at 5–9; 21 at 6–14).  The Court adopts both parties' summaries as accurate and complete and sets forth below the additional facts relevant to the Court's analysis.  (See § IV, infra).

### C. **Administrative Proceedings**

### 1. **The Hearing**

On November 25, 2019, ALJ Singh conducted the Hearing, at which Mr. Finn was represented by counsel.  (R. 30–55).  During his testimony, Mr. Finn testified that he had previously suffered injuries in a fall, and after returning to work, "had a truck accident that further harmed [his] back."  (R. 35 (the "Injury")).  Following the Injury, he underwent physical therapy, received "three or four" injections, acupuncture, and massages, and lost weight.  (R. 35–36).  Physical therapy, losing weight, and massages "helped."  (R. 36).  Mr. Finn said that he took pain medications, including Gabapentin[1] and Mobic,[2] which "did help" but "made [him] sleepy." (R. 36–37).  He could stand or walk for ten to twelve minutes before needing to sit, and was able to drive for 30–40 minutes before needing to stretch. (R. 37–39).  He was able to do some cooking and part of the laundry, and could go grocery shopping using a scooter.  (R. 39).  Mr. Finn is a

---

[1] Gabapentin, an anticonvulsant or antiepileptic drug, is used to relieve never pain, restless leg syndrome, and prevent and control seizures.  See Gabapentin – Uses, Side Effects, and More, WEBMD, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited September 13, 2022); see also Gabapentin, DRUGS.COM, https://www.drugs.com/gabapentin.html (last visited September 13, 2022).

[2] Mobic is the brand name for the nonsteroidal anti-inflammatory drug ("NSAID") meloxicam, which reduces pain, swelling, and stiffness of the joints.  See Mobic – Uses, Side Effects, and More, WEBMD, https://www.webmd.com/drugs/2/drug-18173/mobic-oral/details (last visited September 13, 2022).

volunteer fireman, but does not "do anything physical for the fire department." (R. 41). He attends church twice weekly for two hours, during which he alternates sitting and standing. (R. 41).

The ALJ also heard testimony from vocational expert ("VE") Linda Stein. (R. 30, 50–55). The ALJ asked the VE to assume an individual with the same age, education, and past work experience as Mr. Finn, limited to a sedentary exertional level, with the option after 20–30 minutes to stand for one to two minutes and sit back down without being off-task, and with the following limitations:

> Can never climb ladders, ropes, or scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; is limited frequently to foot control operations with the left lower extremity; is limited frequently to reaching in front and in the back; is to avoid hazards such as moving machinery.

(R. 52 (the "First Hypothetical")). The VE testified that such an individual could not perform Mr. Finn's past work—tractor-trailer truck driver for which the DOT is 904.383-010 (R. 51)—but could perform other jobs, including table worker (DOT 739.687-182), touch up screener or circuit board assembler (DOT 726.684-110), and lens inserter (DOT 713.687-026). (R. 53). The ALJ then asked about an individual like the one in the First Hypothetical but who needed to take unscheduled breaks outside normal breaks resulting in the individual being off-task more than 15% of a workday. (R. 53–54 (the "Second Hypothetical")). The VE testified that the individual in the Second Hypothetical could perform neither Mr. Finn's past work nor any other jobs, because being 15% "off task in addition to regular breaks is going to preclude full-time gainful employment." (R. 54). Finally, the ALJ asked about an individual like the one in the First Hypothetical but limited to reaching occasionally in front and back. (R. 54 (the "Third Hypothetical")). The VE testified that an individual in the Third Hypothetical would have

"significantly" reduced sedentary capacity, and that the one or two jobs with occasional reaching were not compatible with Mr. Finn's background, education, and training, such that the occasional reaching limitation would "preclude alternative jobs on the sedentary level." (R. 54). The ALJ left the record open after the Hearing to permit Mr. Finn to submit additional medical records. (R. 55).

### 2.   The ALJ Decision and Appeals Council Review

On February 21, 2020, ALJ Singh issued her Decision finding that Mr. Finn had not been disabled between the Onset Date and the RTW Date and denying his application for DIB. (R. 15–25).

ALJ Singh followed the five-step disability determination process. At step one, the ALJ found that Mr. Finn had not engaged in substantial gainful activity since the alleged Onset Date. (R. 17). At step two, ALJ Singh found that Mr. Finn had the following severe impairments: obesity; bilateral L5 radiculopathy; degenerative disc disease; left shoulder impairment; diabetes; neuropathy; and hypertension. (R. 17).

At step three, ALJ Singh found that Mr. Finn did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Act. (R. 19). (The impairments listed in 20 C.F.R. Appendix 1, Subpart P, Part 404 are known as the "Listings"). Specifically, the ALJ found that Mr. Finn did not meet Listing 1.04 (disorder of the spine) because he did not meet the severity requirements "including but not limited to evidence of nerve root compression with sensory or reflex loss; spinal arachnoiditis[;] or spinal stenosis resulting in pseudoclaudication." (R. 19).

ALJ Singh then assessed Mr. Finn's RFC as being able to

> perform sedentary work as defined in 20 C[.]F[.]R[.] 404.1567(a) except he would require a sit stand option every 20 to 30 minutes, having to stand for 1 or 2 minutes before sitting.  He would be unable to climb ladders ramps or scaffolds but could occasionally climb ramps and stairs, stoop, balance, crouch, kneel and crawl.  [Mr. Finn] can occasionally perform push pull operations with his left lower extremity and is limited to frequent reaching in front and back.  He must avoid work hazards and moving machinery.

(R. 19).

At step four, ALJ Singh concluded that Mr. Finn was unable to perform his past relevant work.  (R. 23).  At step five, the ALJ concluded, based on the testimony of VE Stein, that there were three jobs that exist in significant numbers in the national economy that Mr. Finn could perform:  (1) table worker/sorter (DOT 739.687-182) of which there are 557,510 national jobs; (2) touch up screener (DOT 726.684-110) of which there are 557,510 national jobs; and (3) lens inserter (DOT 713-687-206) of which there are 230,760 national jobs.  (R. 23–24).  The ALJ accordingly found that Mr. Finn was not under a disability from the Onset Date through the date of the Decision.  (R. 24).

On May 7, 2021, the Appeals Council denied Mr. Finn's request for review of ALJ Singh's Decision.  (R. 1–5).

### III.    LEGAL STANDARDS

#### A.  Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law.

See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008) ("Calvello I"), adopted by, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) ("Calvello II").  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Calvello I, 2008 WL 4452359, at *8.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the

claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the

Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the

claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc.

Sec., 143 F.3d 115, 118 (2d Cir. 1998).

### B.  Eligibility for Benefits

For purposes of DIB benefits, one is "disabled" within the meaning of the Act, and thus

entitled to such benefits, when she is "unable to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of

such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy[.]"  42 U.S.C. § 1382c(3)(B).  In reviewing a

claim of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnosis or

medical opinions based on those facts; (3) subjective evidence of pain and disability testified to

by claimant and other witnesses; and (4) the claimant's background, age, and experience."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential

five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v).  The Second Circuit has described

the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in
> substantial gainful activity.  If he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant suffers such an

impairment, the <u>third</u> inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the <u>fourth</u> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  <u>Finally</u>, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

<u>Bush v. Shalala</u>, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  <u>See</u>, <u>e.g.</u>, <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid[.]" <u>Zorilla v. Chater</u>, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### C.  <u>Medical Opinion Evidence</u>

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant.  <u>See</u> 20 C.F.R. § 404.1527; <u>see also</u> <u>Taylor v. Barnhart</u>, 117 F. App'x 139, 140 (2d Cir. 2004).  Under this "[T]reating [P]hysician [R]ule," an ALJ was required to "give good reasons" <u>Kevin E. v. Comm'r of Soc. Sec.</u>, No. 19 Civ. 593 (EAW), 2021 WL 1100362, at *3–4 (W.D.N.Y. Mar. 23, 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions of non-treating and non-examining sources.  <u>Gonzalez v. Apfel</u>, 113 F. Supp. 2d 580,

588–89 (S.D.N.Y. 2000).  In addition, under the Treating Physician Rule, a consultative physician's opinion was generally entitled to "little weight."  Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F. R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  These new regulations reflect a move away from a perceived hierarchy of medical sources.  See id.  The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[3]  20 C.F.R. § 404.1520c(a).  See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and "evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency, (3) relationship of the source with the claimant, (4) the medical source's specialization, and (5) any

---

[3] The new regulations define "prior administrative medical finding" as:

    [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the duration requirement; and (vii) How failure to follow prescribed treatment (see § 416.935) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5).

"other" factor that "tend[s] to support or contradict a medical opinion[.]"   20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 404.1520c(a). Under the new regulations, the ALJ must "explain[,]" in all cases, "how [he or she] considered" both the supportability and consistency factors, as they are "the most important factors[.]"  Id. § 404.1520c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors).  As to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."  Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Vellone I") (citing 20 C.F.R. § 404.1520c(c)(1)), adopted by, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("Vellone II").  Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone I, 2021 WL 319354, at *6; see 42 U.S.C. § 423(f) (requiring ALJ to base decision on "all the evidence available in the" record).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss them, in determining the persuasiveness of the opinion of a medical source.  20 C.F.R. § 404.1520c(b)(2).  If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors.  See id. § 404.1520c(b)(3).

Several opinions among the district courts within the Second Circuit applying the new regulations have concluded that "the essence" of the Treating Physician Rule "remains the same,

and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." Acosta Cuevas v. Comm'r of Soc. Sec., No. 20 Civ. 502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (surveying district court cases in the Second Circuit considering the new regulations), adopted by 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022); see, e.g., Prieto v. Comm'r of Soc. Sec., No. 20 Civ. 3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (noting that under both the Treating Physician Rule and the new regulations, "an ALJ's failure to properly consider and apply the requisite factors is grounds for remand"); Andrew G. v. Comm'r of Soc. Sec., No. 19 Civ. 942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (noting that "consistency and supportability" were "the foundation of the treating source rule"); see also Brianne S. v. Comm'r of Soc. Sec., No. 19 Civ. 1718 (FPG), 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding to ALJ with instructions to provide explicit discussion of supportability and consistency of two medical opinions, because ALJ's "mere[] state[ment]" that examining physician's opinion was not consistent with overall medical evidence was insufficient).

### D. Assessing a Claimant's Subjective Allegations

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms[.]" 20 C.F.R. § 404.1529(c)(1); see SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). If such an impairment is found, the ALJ must next evaluate the "intensity and persistence of [the] symptoms [to] determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). To the extent that the claimant's expressed symptoms are not substantiated

by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts."  Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010).  "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)."  Id.  "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 404.1529(c)(3)]."  Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).  If the ALJ does not follow these steps, remand is appropriate.  Sanchez, 2010 WL 101501, at *14–15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  See Meadors, 370 F. App'x at 183–84; Briggs v. Saul, No. 19 Civ. 9776 (SLC), 2021 WL 796032, at *13 (S.D.N.Y. Feb. 26, 2021).  These seven factors include:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6)

measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bush, 94 F.3d at 46 n.4; 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *4–9.

## IV.    DISCUSSION

Mr. Finn raises two challenges to the ALJ Decision:  (1) the ALJ's RFC determination is not supported by substantial evidence; and (2) the ALJ erred in assessing his credibility.  (ECF No. 18 at 12–15).  The Commissioner argues, inter alia, that substantial evidence supports ALJ Singh's RFC determination and evaluation of Mr. Finn's credibility.  (ECF No. 21 at 14–24).

### A.  RFC Determination

In challenging the ALJ's determination that he could perform sedentary work with limitations, Mr. Finn argues that the ALJ erred in failing to consider (1) the side effects of his medications under 20 C.F.R. § 404.1521 and SSR 96-3p, and (2) the instruction from his treating physician, Dr. Omar, that he avoid sitting for "longer period[s] of time."  (ECF No. 18 at 12–13; R. 545).  The Commissioner responds that any medication side effects were not "severe enough to impact his RFC[,]" and that the ALJ's RFC determination, which included limitations to sitting, reflects the ALJ's consideration of Dr. Omar's treatment records.  (ECF No. 21 at 19–20, 23–24).

An RFC determination represents "the most [a claimant] can still do despite [his] limitations[,]" based on all the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(1). It reflects the Commissioner's assessment of "the 'nature and extent' of a claimant's physical limitations and capacity for work activity on a regular and continuing basis."  Elliott v. Colvin, No. 13 Civ. 2673 (MKB), 2014 WL 4793452, at *19 (E.D.N.Y. Sept. 24, 2014) (quoting 20 C.F.R.

§ 404.1545(b)).  "The RFC determination is reserved to the Commissioner."  <u>Ramirez v. Saul</u>, No. 20 Civ. 2922 (NSR) (JCM), 2021 WL 4943551, at *11 (S.D.N.Y. July 2, 2021) (citing <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 Fed. App'x 5, 8 (2d Cir. 2017)).

"The RFC determination 'must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'"  <u>Acevedo v. Saul</u>, No. 20 Civ. 8027 (GWG), 2021 WL 6110933, at *8 (S.D.N.Y. Dec. 27, 2021) (quoting <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).  "While an ALJ will consider medical opinions on a plaintiff's functioning, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole."  <u>McKnight v. Comm'r of Soc. Sec.</u>, No. 17 Civ. 1054 (CS) (JCM), 2018 WL 4062705, at *11 (S.D.N.Y. Aug. 24, 2018) (citing 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c)).  "It is the Commissioner's role to weigh medical opinion evidence and to resolve conflicts in that evidence."  <u>Milliken v. Saul</u>, No. 19 Civ. 09371 (PED), 2021 WL 1030606, at *8 (S.D.N.Y. Mar. 17, 2021) (citing <u>Cage v. Comm'r of Soc. Sec.</u>, 692 F.3d 118, 122 (2d Cir. 2012)). "It is ultimately the claimant's burden to prove that [he or she] should have a more restrictive RFC than the one assessed by the ALJ."  <u>Villalobo v. Saul</u>, No. 19 Civ. 11560 (CS) (JCM), 2021 WL 830034, at *16 (S.D.N.Y. Feb. 9, 2021) (citing <u>Smith v. Berryhill</u>, 740 F. App'x 721, 726 (2d Cir. 2018)).

First, the Court finds that substantial evidence supports the ALJ's decision not to include any limitation in the RFC for medication side effects.  As an initial matter, Mr. Finn incorrectly relies on SSR 96-3p in support of his argument that the ALJ failed to evaluate the side effects of his medication.  (ECF No. 18 at 13).  As other courts in this District have recognized, "SSR 96-3p has been rescinded[,]" and the applicable analysis, as set forth above (<u>see</u> § III.C, <u>supra</u>), appears

in SSR 16-3p and 20 C.F.R. § 404.1529(c)(3).  Acevedo, 577 F. Supp. 3d at 253.  The current regulations required the ALJ, as part of the two-step process, to consider "[t]he type, dosage, effectiveness, and side effects of any medication [he took] to alleviate [his] pain or other symptoms[.]"  20 C.F.R. § 404.1529(c)(3)(iv).  Here, the ALJ specifically noted that medication management was a component of Mr. Finn's treatment, which overall had been "beneficial" and "increas[ed] his functioning and [activities of daily living,]" but after "considering the type, dosage, effectiveness, and side effects of any medication[,]" concluded that it would not have prevented [him] from engaging in the above [RFC]."  (R. 22).  The ALJ thus complied with the currently-applicable regulation, SSR 16-3p.

As the Commissioner correctly points out, the Record does not indicate that Mr. Finn experienced side effects "severe enough to impact his RFC."  (ECF No. 21 at 23).  Rather, the treatment records reflect that he was permitted to take up to four Percocet daily "as needed for pain[,]" (R. 345), but do not show how often, if at all, he took the maximum dose or otherwise contain any evidence that Mr. Finn ever complained that his medication made him drowsy or otherwise impeded his ability to function.  (See ECF No. 21 at 23).  The Record also indicates that that, as of January 2019 that he had returned to work three days per week as a driver and was no longer taking "opioids." (R. 522).  Following a radiofrequency ablation of the medium branch multiple facet joints on his right side in March 2019 (R. 528), he reported a 75–80% improvement and was able to "return to baseline function after the procedure." (R. 542).  Further, given the daily activities that Mr. Finn was able to perform, including driving, preparing some meals, caring for his daughter, and attending church twice per week, the Court finds no fault with the ALJ's conclusion that Mr. Finn's subsequent statements at the Hearing—ten months later—that his

medications had made him "sleepy" and "dull" were "not entirely consistent with the medical evidence." (R. 22, 37). Finally, as the Commissioner also correctly notes, Mr. Finn bore the burden to show that the side effects of his medication necessitated a more restrictive RFC. (ECF No. 21 at 24). The Record demonstrates that the ALJ correctly determined that Mr. Finn failed to meet that burden, and properly weighed Mr. Finn's pain medication in assessing an RFC consistent with Mr. Finn's functional limitations. See Villalobo, 2021 WL 830034, at *16 (affirming ALJ's conclusion that claimant failed to meet burden to show more restrictive RFC).

Second, Mr. Finn is simply incorrect in arguing that the ALJ Decision "does not even mention Dr. Omar's opinion." (ECF No. 18 at 13). As an initial matter, the Record does not appear to contain a medical source opinion from Dr. Omar, i.e., a statement about what Mr. Finn could "still do despite [his] impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2). Rather, Dr. Omar "advised" Mr. Finn to take several steps "to improve the functional capacity" including "[l]ow impact aerobic conditioning[,] [s]trengthening exercises[,] [w]alking[,] [i]ncreas[ing] daily activity as tolerated[,] [and] avoid[ing] sitting for longer period of time." (R. 545). These prescriptive, rather than descriptive, statements do not qualify as medical opinion whose supportability and consistency the ALJ would have been required to assess. See Joycelyn A.C. v. Comm'r of Soc. Sec., No. 20 Civ. 1200 (GLS) (DEP), 2022 WL 605736, at *7 (N.D.N.Y. Feb. 7, 2022), adopted by, 2022 WL 602650 (N.D.N.Y. Mar. 1, 2022); Kathleen M. v. Comm'r of Soc. Sec., No. 20 Civ. 1040 (TWD), 2022 WL 92467, at *7 (N.D.N.Y. Jan. 10, 2022) (finding that ALJ did not err in failing to address persuasiveness of doctor's letter that that did "not address what Plaintiff could still do despite her impairments" and therefore was not a "medical opinion" under 20 C.F.R. § 404.1513(a)(2)).

In any event, the ALJ specifically referenced Dr. Omar's office treatment notes, which indicated "complaints of pain and generally mild to moderate clinical findings[,]" and injections that resolved his back and leg pain by more than 80%. (R. 20–21 (referencing R. 541–85)).  The ALJ also noted Mr. Finn's comment to Dr. Omar that the injections had "helped immensely[.]" (R. 21 (quoting R. 542)).  Although Dr. Omar's notes reflected that some of Mr. Finn's pain had returned as of June 2019, they also demonstrated that, "[b]y September 2019 . . . his back and left lower extremity pain with numbness and tingling was mild and intermittent[,]" and that he had been able to "maintain daily activities[.]"  (R. 21 (citing R. 571)).  In the limitation that Mr. Finn have a "sit stand option every 20 to 30 minutes, having to stand for 1 or 2 minutes before sitting[,]" (R. 19), the ALJ's RFC determination also incorporated Dr. Omar's recommendation that Mr. Finn should avoid sitting for longer periods of time.  (R. 545).

Finally, to the extent Mr. Finn's argument is suggesting that, as a treating physician, Dr. Omar was entitled to greater weight than the ALJ afforded, he is incorrectly invoking the now-superseded Treating Physician Rule.  (See § III.C, supra).[4]

---

[4] Mr. Finn criticizes the ALJ for including in the RFC the limitation that "[h]e would be unable to climb ladders, ramps, or scaffolds, but could occasionally climb ramps and stairs . . . ."  (ECF No. 18 at 11 n.3). The first reference to "ramps," however, appears to have been a typographical error, as "ropes," not "ramps," are usually grouped with ladders and scaffolds in RFC determinations.  See, e.g., Archibald v. Comm'r of Soc. Sec., No. , 2021 WL 1172621, at *2 (S.D.N.Y. Mar. 29, 2021) (noting that ALJ limited claimant to "occasionally climb[ing] stairs, but never ropes, ladders, or scaffolds"); Puente v. Comm'r of Soc. Sec., 130 F. Supp. 3d 881, 887 (S.D.N.Y. 2015) (noting that ALJ had limited claimant to "occasionally climb[ing] ramps or stairs and stoop; and [] never climb[ing] ladders, ropes, or scaffolds").  That the ALJ intended the first "ramps" to be "ropes" is also consistent with the limitation he posed in the First Hypothetical to the VE at the Hearing.  (R. 52 ("Can never climb ladders, ropes, or scaffolds")).  The Court finds that this inadvertent typographical error was harmless and does not undermine the ALJ's conclusions.  See Wearen v. Colvin, No. 13 Civ. 6189P, 2015 WL 1038236, at *11 (W.D.N.Y. Mar. 10, 2015) (holding that ALJ's two typographical errors in severity assessment and RFC determination did not require remand).

### B.  Credibility Assessment

Mr. Finn argues that the reasons the ALJ gave for finding his testimony about the intensity, persistence, and limiting effects of his symptoms not credible—that his treatments were beneficial and that he was able to engage in many daily activities—were not "valid," and points to treatment notes he contends "suggest that [his] functioning and activities of daily living did not improve significantly during the disability period."  (ECF No. 18 at 14).  The Commissioner asserts that Mr. Finn is offering an "alternative narrative of no improvement" that "does not undermine the ALJ's reasonable interpretation of the record."  (ECF No. 21 at 20, 22).

The ALJ noted Mr. Finn's testimony that he had a history of back pain that limited his ability to lift, sit, walk, or stand, and prevented him from remaining in one position for longer than 20 or 30 minutes.  (R. 20).  The ALJ contrasted this testimony with Mr. Finn's other statements that he could "cook, drive locally, go to church twice a week and care for his 11 year old daughter" as well as make "short trips within the state to visit family and occasionally meet[] others for dinner."  (R. 20).  The ALJ also pointed to the examination by Gilbert Jenouri, M.D., in October 2018, at which time Mr. Finn appeared to be "in no acute distress[,]" having a normal gait and stance, and having the ability to squat to 50%, change for the exam, get on and off the table, and rise from a chair all without difficulty.  (R. 20 (citing R. 480)).  The ALJ noted Dr. Jenouri's findings that, despite some limited range of motion in Mr. Finn's lumbar spine, shoulders, hips, and knees, there were no "subluxations, contractures, ankylosis, or thickening" nor muscle atrophy.  (R. 20; see R. 480–81).  Dr. Jenouri thus concluded that Mr. Finn had only a mild to moderate restriction walking or standing for long periods, bending, stair climbing, lifting, and

carrying (R. 481), all of which the ALJ found persuasive and thus incorporated into the limitations in the RFC.  (R. 19).  The ALJ appropriately considered Mr. Finn's daily activities as part of the RFC analysis, and substantial evidence supports the ALJ's conclusions regarding Mr. Finn's subjective complaints.  See David S. v. Comm'r of Soc. Sec., No. 20 Civ. 1392 (DJS), 2022 WL 2869602, at *8 (N.D.N.Y. July 21, 2022) (finding that ALJ's evaluation of claimant's testimony was supported by substantial evidence).

Mr. Finn's arguments contesting the ALJ's evaluation of the credibility of his subjective complaints of pain are, essentially, challenges to the ALJ's factual findings and weighing of the record evidence.  "However, in determining whether the ALJ's factual findings are supported by substantial evidence, the reviewing court may not reweigh the evidence or substitute its own opinion for that of the ALJ."  Gilliam v. Comm'r of Soc. Sec., No. 17 Civ. 3764 (ER) (BCM), 2018 WL 9837921, at *10 (S.D.N.Y. Sept. 5, 2018), adopted sub nom. Gilliam v. Berryhill, 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019).  Indeed, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record."  Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998); see Veino, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks and citation omitted).  Having determined that the ALJ's RFC determination is supported by substantial evidence, and considering the "very deferential standard of review" applicable to this case, the Court declines to disturb the ALJ's factual determinations.  Id.

## V.    CONCLUSION

For the reasons set forth above, Mr. Finn's Motion is DENIED and the Commissioner's Motion is GRANTED.  The Clerk of Court is respectfully directed to terminate ECF Nos. 17 and 20, and to close this case.

Dated:      New York, New York
            September 15, 2022

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**